**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| UNITED STATES,<br><br>    v.<br><br>DAVID HARRIS,<br><br>        *Defendant.* | Criminal Action No. 19-356 |

## MEMORANDUM OPINION

The Court previously entered an Order, Dkt. 35, granting Defendant's emergency motion for release pending sentencing, Dkt. 28, and, in doing so, indicated that it would issue an opinion explaining the basis for its conclusions that (1) the safety valve from mandatory detention found in 18 U.S.C. § 3145(c) authorizes district court judges to grant relief in appropriate circumstances, and (2) the risks posed by the COVID-19 pandemic may at times, along with all of the other relevant circumstances presented in a particular case, satisfy the "exceptional reasons" standard.

## I.   BACKGROUND

**A.      Procedural Background**

On August 1, 2019, Defendant was charged with Distribution of Child Pornography in violation of 18 U.S.C. § 2252(a)(2), an offense that carries a five-year mandatory minimum term of incarceration.  Dkt. 1; 18 U.S.C. § 2252(b)(1).  He made his initial appearance on August 6, 2019, Minute Entry (Aug. 6, 2019), and, three days later, Magistrate Judge Harvey heard the Government's motion for Harris to be detained pending trial pursuant to 18 U.S.C. § 3142.  Dkt. 10 at 1.

Magistrate Judge Harvey concluded that, because Harris was charged under 18 U.S.C. § 2252(a)(2) and because there was probable cause that he had committed the offense, the rebuttable presumption that he posed a flight risk and danger to the community, if released, applied in his case. *Id.* at 11. Magistrate Judge Harvey found, however, that Harris had offered sufficient evidence to rebut the presumption that he was a flight risk by demonstrating that he had ample family support and that, when he "learned there was a warrant for his arrest, he stayed in contact with law enforcement and surrendered himself a few days later." *Id.* at 12. As to the dangerousness prong, however, Magistrate Judge Harvey concluded that Harris had not rebutted the presumption. *Id.* at 12–13. Although "a close case," Magistrate Judge Harvey ordered Harris detained because of the seriousness of the charged offense and because Pretrial Services lacked the resources to monitor his use of electronic devices if released. *Id.* Harris later moved for reconsideration of the detention order, but Magistrate Judge Harvey denied that motion, again noting the seriousness of the charge and Pretrial Services' inability to "monitor [Harris's] use of computers, smart phones, or the internet." Minute Order (Sept. 11, 2019).

On November 8, 2019, Harris pleaded guilty to one count of Distribution of Child Pornography in violation of 18 U.S.C. § 2252(a)(2), pursuant to a written plea agreement, and, because the parties did not seek any modification in the terms of his detention, the Court ordered that Harris remain detained pending his sentencing. Minute Entry (Nov. 8, 2019). On March 19, 2020, Harris filed an emergency motion for release from detention pending sentencing in light of the ongoing COVID-19 pandemic. Dkt. 28. The Government opposed that motion. Dkt. 29.

**B.    COVID-19**

"COVID-19 is a serious disease." Dkt. 32-1 at 17 (Greifinger Decl. ¶ 4). Although COVID-19 is "characterized by a flu-like illness," it is a far more deadly, with "5–35 times the

2

fatality associated with influenza infections." *Id.* at 12 (Beyrer Decl. ¶ 5).  COVID-19 is "highly

infectious," with "each newly infected person . . . estimated to infect on average 3 additional

persons"—"only the great influenza pandemic of 1918 (the Spanish Flu as it was then known) is

thought to have higher infectivity." *Id.* at 13 (Beyrer Decl. ¶ 10).  At the moment, there "is no

known cure or anti-viral treatment for COVID-19." Dkt. 32-1 at 17 (Greifinger Decl. ¶ 4).

Experts have urged that the only way to mitigate the spread of the disease is for people to use

preventive strategies, including "scrupulous hand hygiene and social distancing." *Id.*  The

Center for Disease Control and Prevention recommends keeping a distance of six feet from other

people to minimize the possibility of infection, washing one's hands often with soap and water,

and using a hand sanitizer that contains at least 60% alcohol.  *How To Protect Yourself*, CDC

(Mar. 4, 2020), available at https://tinyurl.com/uep9p6h.  Slowing the spread of the disease is

"critical," *15 Days to Slow the Spread*, White House (2020), available at

https://www.whitehouse.gov/wp-content/uploads/2020/03/03.16.20_coronavirus-

guidance_8.5x11_315PM.pdf, as a rapid spread can overwhelm local health infrastructure.

COVID-19 causes prolonged serious illness, which can require "significant advanced support,

including ventilator assistance for respiration and intensive care support." Dkt. 32-1 at 21 (Stern

Decl. ¶ 6).

　　　　COVID-19 has become a "global pandemic and has been termed a global health

emergency by the [World Health Organization]." Dkt. 32-1 at 12 (Beyrer Decl. ¶ 3).  On March

13, 2020, the President declared a national emergency, and, as of the date of this opinion, there

have been at least 85,381 cases across the country and at least 1,271 virus-associated deaths.

*Coronavirus in the U.S.: Latest Map and Case Count*, N.Y. Times, available at

https://tinyurl.com/t9j9fdw (last accessed Mar. 27, 2020).  Experts expect an explosion of new

cases in the days ahead.  *Id.*  In Virginia, Maryland, and the District of Columbia, there have

been 1,277 confirmed cases of COVID-19.  *Coronavirus in the DMV: What You Need to Know*,

Washington Post, available at https://tinyurl.com/txwj5gp (last accessed Mar. 27, 2020).  In

response to the pandemic, the Mayor of Washington, D.C. has declared a state of emergency and

has ordered the closure of all nonessential businesses, in line with orders issued around the

country.  *Id.*

COVID-19 poses a unique and "serious risk to inmates and workers in detention

facilities."  Dkt. 32-1 at 13 (Beyrer Decl. ¶ 11).  "Facilities, including jails, prisons, and other

closed settings" are "associated with high transmission probabilities for infectious diseases."  *Id.*

"A number of features of these facilities can heighten risks for exposure, acquisition,

transmission, and clinical complications of these infectious diseases."  *Id.* (Beyrer Decl. ¶ 14).

"These include physical/mechanical risks such as overcrowding, population density in close

confinement, insufficient ventilation, shared toilet, shower, and eating environments and limits

on hygiene and personal protective equipment such as masks and gloves in some facilities."  *Id.*

"Additionally, the high rate of turnover and population mixing of staff and detainees increases

likelihoods of exposure."  *Id.*  (Beyrer Decl. ¶ 15).  "Infections that are transmitted through

droplets," like COVID-19, "are particularly difficult to control in detention facilities, as 6-foot

distancing and proper decontamination of surfaces is virtually impossible."  *Id.*  (Beyrer Decl.

¶ 13).  It is perhaps for these reasons, that there have been "prison outbreaks of COVID-19 in

multiple detention facilities in China."  *Id.* (Beyrer Decl. ¶ 15).  Given these facts, some experts

opine that "an outbreak of COVID-19 among the U.S. jail and prison population is likely."  *Id.* at

14 (Beyrer Decl. ¶ 19).  To date, the D.C. Jail has reported only one case of COVID-19, *D.C.*

*Jail Inmate Tests Positive For Coronavirus*, Washington Post (Mar. 26, 2020 6:26a.m. EST),

available at https://www.washingtonpost.com/dc-md-va/2020/03/26/coronavirus-dc-maryland-virginia-updates/ (last accessed Mar. 26, 2020), but the risk of further infections seems likely.

## II.  ANALYSIS

### A.    Statutory Authority

Although Harris originally premised his emergency motion on 18 U.S.C. § 3142, Dkt. 28 at 1, that provision applies only to a person seeking release pending trial.  18 U.S.C. § 3142(a). Release pending sentencing, as relevant here, is governed by 18 U.S.C. § 3143, which requires that a court detain a person found guilty of a violent felony pending sentencing, absent certain narrow exceptions.  *Id.* § 3143(a).  Harris does not dispute that the crime he pleaded guilty to, Distribution of Child Pornography in violation of 18 U.S.C. § 2252(a)(2), qualifies as a crime of violence and that, accordingly, he is subject to § 3143(a)(2)'s mandatory detention provision. *See id.*; 18 U.S.C. § 3156(a)(4) (defining a "crime of violence" to include any felony listed in chapter 110 of Title 18, which includes Harris's offense).  Nor does Harris dispute that he qualifies for neither of the narrow exceptions set out in § 3143(a)(2).[1]  Instead, he argues that the public health crisis created by COVID-19 constitutes an "exceptional reason[]" that, when balanced against the minimal risk that he poses to the community, justifies his release pending sentencing under 18 U.S.C. § 3145(c).  Dkt. 31 at 1.  The Government counters that the Court lacks authority to release Harris under that provision because, in the Government's view, the

---

[1]  As the Government observes, because Harris has pleaded guilty, "there is no substantial likelihood that a motion for acquittal or a new trial" will be granted, and "because the offense of distribution of child pornography carries a mandatory minimum term of incarceration and the government has not moved for a downward departure, the government will not and cannot recommend that no sentence of imprisonment be imposed."  Dkt. 29 at 3; 18 U.S.C. 3143(a)(2)(A)(i) & (ii).

exceptional-reasons clause applies only to release determinations made by the courts of appeals.

*See* Mar. 23, 2020 Hrg. Tr. (Rough at 18–19).

The Court begins, as it must, with the statutory text.  *See BP Am. Prod. Co. v. Burton*,

549 U.S. 84, 91 (2006).  Section 3145(c) provides:

> **(c)    Appeal from a release or detention order.—**
>
> An appeal from a release or detention order, or from a decision denying revocation or amendment of such an order, is governed by the provisions of section 1291 of title 28 and section 3731 of this title. The appeal shall be determined promptly. A person subject to detention pursuant to section 3143(a)(2) or (b)(2), and who meets the conditions of release set forth in section 3143(a)(1) or (b)(1), may be ordered released, under appropriate conditions, by the judicial officer, if it is clearly shown that there are exceptional reasons why such person's detention would not be appropriate.

18 U.S.C. § 3145(c).  The relevant question is the whether the phrase "the judicial officer," as

used in the § 3145(c), includes the district court judge presiding over the defendant's case.  The

statute defines the phrase "judicial officer," "unless otherwise indicated," to mean "any person or

court authorized . . . to detain or release a person before trial or sentencing or pending appeal in a

court of the United States."  18 U.S.C. § 3156(a)(1).  A district court judge falls within that

definition.  *See* 18 U.S.C. § 3041 ("For any offense against the United States, the offender may,

*by any justice or judge of the United States* . . . be arrested and imprisoned or released[.]"

(emphasis added)).  No one doubts, for example, that the phrase "judicial officer," as used a

dozen times in 18 U.S.C. § 3143(a) & (b), includes district court judges.  Thus, unless § 3145(c)

indicates "otherwise," the Court may exercise authority under the exceptional-reasons clause.

The Court, like every court of appeals that has addressed the question, concludes that it may

exercise such authority.

The Government argues that, because § 3145(c) is entitled "Appeal from a release or

detention order" and because its first sentence concerns the jurisdiction of courts of appeals, *see*

§ 3145(c) (discussing 28 U.S.C. § 1291, which grants the courts of appeals jurisdiction over appeals from final decisions of the district courts), the term "judicial officer" encompasses only federal appellate judges.  Mar. 23, 2020 Hrg. Tr. (Rough at 18–19).  The Court is unpersuaded for several reasons.

To begin, Congress could easily have limited the reach of § 3145(c) to a "judicial officer" of a court of appeals, if that is what it had intended.  Section 3141(b), the provision generally authorizing district courts and courts of appeals to detain or release a person pending sentencing, for example, provides that a "judicial officer of a court of original jurisdiction over an offense, or a judicial officer of a Federal appellate court, shall order that, pending imposition or execution of sentence, or pending appeal of conviction or sentence, a person be released or detained under [chapter 207]."  18 U.S.C. § 3141(b).  Congress did not limit § 3145(c) to "a judicial officer of a Federal appellate court," and it is not the Court's role to add that qualifier in Congress's stead. *See Omni Capital Int'l v. Rudolf Wolff & Co.*, 484 U.S. 97, 106 (1987) (observing that when Congress knows how to provide a specific outcome but does not, its failure is evidence that the omission was intentional).  As a Department of Justice memorandum explained shortly after the exception was enacted, "[d]espite the fact that the provision authorizing release . . . is contained in a section . . . dealing with <u>appeals</u> from release and detention orders . . . , the provision pertains by its terms to any 'judicial officer', which is broadly defined" in the statute to include district court judges.  James Reynolds, Acting Chief, General Litigation and Legal Advice Section of the Criminal Division, Executive Office of the United States Attorneys, *"Mandatory Detention" Provisions of the Crime Control Act of 1990* (emphasis in original), republished in App'x C, 39 U.S. Attorneys' Bulletin (May 15, 1991).

The Government is correct that the much of the structure and language of § 3145(c) focus on appeals of detention and release orders, but that does not mean—as the Government contends—that "judicial officer" must be construed to mean an appellate judge.  Just as important as the placement of the exceptional-reasons clause in § 3145(c) are the references to § 3143(a) and § 3145(b) in the operative sentence.  That sentence provides that if "[a] person" is "subject to detention pursuant to" either § 3145(a)(2) or § 3145(b)(2), the "judicial officer" may order his release, if the person satisfies the appropriate conditions.  Thus, taking § 3143(a)(2) by way of example, the structure of the exceptional-reasons clause is as follows: if a person is "found guilty" of a violent felony and "is awaiting imposition or execution of sentence," "[t]he judicial officer shall order" that the person "be detained," 18 U.S.C. § 3143(a)(2), except the person "may be ordered released, under appropriate conditions, by "the judicial officer," if it is "clearly shown that there are exceptional reasons why such person's detention would not be appropriate," *id.* § 3145(c), and if the person "meets the conditions of release set forth in section 3143(a)(1) or (b)(1)," *id.*  The fact that Congress used the definite article, referring to "the" judicial officer, is difficult to reconcile with the Government's contention that the same judicial officer who made the original detention decision is precluded by the statutory text from exercising authority under the exceptional-reasons clause.

Nor is the Court persuaded that the statutory reference to "[a] person subject to detention pursuant to section 3143(a)(2) or (b)(2)" means that the exceptional-reasons clause applies only after a district court has issued a detention order, which is then subject to appeal.  18 U.S.C. § 3145(c).  Read in context, the phrase "subject to" does not mean "someone already '*subjected*' to mandatory detention," *see United States v. Williams*, 903 F. Supp. 2d 292, 300 (M.D. Pa. 2012); it means "affected by or *possibly* affected by," *Subject To*, Merriam-Webster.com,

available at https://www.merriam-webster.com/dictionary/subject%20to (last accessed Mar. 26, 2020) (emphasis added). As the court observed in *Williams*, the use of the passive voice in the third sentence of § 3145(c) ("subject to") contrasts with the use of the active voice in § 3145(a) and (b) ("[i]f a person is ordered detained"). 903 F. Supp. 2d at 300. Accordingly, "the syntax of the statutory language also supports the [C]ourt's conclusion that the third sentence of § 3145(c) contemplates something more than appellate review of detention orders." *Id.*

The overwhelming majority of the judicial decisions interpreting § 3145(c) also runs counter to the Government's position. Although the D.C. Circuit has yet to weigh in, every court of appeals that has addressed the question has held that a district court judge may order a person released pursuant to 18 U.S.C. § 3145(c). *See, e.g.*, *United States v. Meister*, 744 F.3d 1236, 1239 (11th Cir. 2013); *United States v. Goforth*, 546 F.3d 712, 715 (4th Cir. 2008); *United States v. Cook*, 42 F. App'x 803, 804 (6th Cir. 2002); *United States v. Herrera-Soto*, 961 F.2d 645, 647 (7th Cir. 1992); *United States v. Jones*, 979 F.2d 804, 806 (10th Cir. 1992); *United States v. Carr*, 947 F.2d 1239, 1240 (5th Cir. 1991); *see also United States v. Garcia*, 340 F.3d 1013, 1022 (9th Cir. 2003) (remanding to the district court with instructions on what factors to consider in determining whether "exceptional reasons" exist under § 3145(c)); *United States v. Lea*, 360 F.3d 401, 403 (2d Cir. 2004) (reversing a district court's holding that "exceptional reasons" existed because the situation was not out of the ordinary).

A minority of district courts, to be sure, have held otherwise. In *United States v. Chen*, 257 F. Supp. 2d 656, 660 (S.D.N.Y. 2003), for example, the district court held that the "structure, language, and placement of section 1345(c) all favor the view that a district court is not invested with the power to reach 'exceptional reasons.'" The Court is unpersuaded on each of these counts. First, the *Chen* court stressed that § 3145(a) and § 3145(b) use the word "review" in

their titles, while § 3145(c) uses the word "appeal" in its title.  *Id.*  But courts typically place "less weight" on the title of a section heading because they are "'but a short-hand reference to the general subject matter' of the provision," and "'not meant to take the place of the detailed provisions of the text.'"  *Lawson v. FMR LLC*, 571 U.S. 429, 446 (2014) (quoting *Trainmen v. Baltimore & Ohio R. Co.*, 331 U.S. 519, 528 (1947)).  Where the plain language matters most is in the text of the third sentence of § 3145(c) and, there, Congress made no mention of appeals and, more importantly, granted the relevant authority to "the judicial officer"—a phrase that includes district court judges.  18 U.S.C.§ 3145(c).  Second, the *Chen* court puzzled over why Congress placed the exceptional-reasons clause in a portion of the statute dealing with review and appeals and not in § 3143 itself.  *Chen*, 257 F. Supp. 2d at 661.  That is a fair question, but not enough to overcome the plain language of the statute.  Finally, the *Chen* court relied on the fact that the Federal Rules of Criminal Procedure refer only to § 3143 in discussing "release pending sentencing or appeal," Fed. R. Crim. P. 46(c), while the Federal Rules of Appellate Procedure refer to §§ 3142, 3143, and 3145(c), in discussing appellate review of release or detention decisions, Fed. R. App. Pro. 9(c).  But that argument proves too much, since the Federal Rules of Criminal Procedure do not refer to any portion of § 3145, and §§ 3145(a) and (b) indisputably authorize district court judges to detain or release criminal defendants, as appropriate.

The Court, accordingly, concludes that 18 U.S.C. § 3145(c) authorizes district court judges to grant relief in appropriate circumstances.

**B.    Exceptional Reasons**

The second question of statutory interpretation posed by Harris's motion is whether a widespread threat, like COIVD-19, can, along with all of the other relevant circumstances presented in a particular case, satisfy the "exceptional reasons" standard.  In this respect, the Government (sensibly) does not dispute that COVID-19 constitutes "exceptional" circumstances—at least in a "broad sense."  Mar. 23, 2020 Hrg. Tr. (Rough at 24).  Rather, it argues that the pandemic does not constitute an exceptional reason to release a particular person, unless that person is somehow uniquely affected by the health crisis.  *Id.*  In other words, an exceptional reason "depends on the particularized risk as posed to this defendant based on his individual condition."  *Id.* (Rough at 26).  The Government, accordingly, urges the Court to wait and see if conditions at the prison change and to wait to assess whether Harris faces some acute risk.  *See id.* (Rough at 26).

Since the Government urged the Court to wait and see, at least one person at the D.C. jail has tested positive for the virus.  The Government is nonetheless right that we do not know with any certainty whether Harris will contract the virus if he remains at the D.C. Jail, and, if he does, we do not know whether he will suffer from any severe symptoms.  But uncertainty is endemic in the present circumstances, and that uncertainty cannot preclude courts from acting until the damage has been done.  The prevailing uncertainty, instead, is one of the many factors courts must consider in deciding whether the person has "clearly shown that there are exceptional reasons why such person's detention would not be appropriate."  18 U.S.C. § 3145(c). "Appropriate" means "suitable or proper in the circumstances" and connotes a sense of practical decency.  *Appropriate*, Oxford English Dictionary Online, (March 2020), available atwww.oed.com/view/Entry/9870 (last accessed March 26, 2020).  "[E]xceptional," in turn,

11

"means clearly out of the ordinary, uncommon, or rare." *United States v. Hosier*, 617 Fed.

App'x. 910, 913 (10th Cir. 2015) (quoting *United States v. Little*, 485 F.3d 1210, 1211 (8th Cir.

2007) (alteration in original)).  A "wide range of factors may bear upon the [§ 3145(c)] analysis,"

and a district court has "broad discretion . . . to consider all the particular circumstances of the

case before it and [to] draw upon its broad 'experience with the mainsprings of human conduct.'"

*Garcia*, 340 F.3d at 1018 (quoting *Mozes v. Mozes*, 239 F.3d 1067, 1073 (9th Cir. 2001)).

The Court's conclusion that the exceptional-reason clause does not demand certainty

does not mean that any risk is sufficient.  Rather, courts must weigh the relevant risk to the

person detained, the community at large, and all other relevant circumstances in deciding

whether the exceptional-reasons safety valve to the mandatory detention rules is available.  And,

even when a court concludes that it is available, the Court must still determine whether there is

clear and convincing evidence that the person is not a risk of flight and will not pose a danger to

the community.  Only when all three conditions are "clearly" satisfied should a court release

someone pending sentencing, and, even then, it should do so only on conditions that will protect

the community.

Finally, the Court stresses that each case must be evaluated on its one terms, and each

case requires consideration of the all of the relevant circumstances.  The exceptional-reasons

analysis is flexible and permits courts to respond to real-world circumstances in a pragmatic and

common-sense manner.  The presence of COVID-19 is one such circumstance, but it is not the

only one.  Here, on the particular facts of this case, where the decision to hold Harris pending

trial was a "close case" even before the pandemic developed, and where Harris will be released

into the custody of his father under strict conditions and will have no access to the internet, *see*

attachments A and B, the Court is convinced that his release is "appropriate.

## CONCLUSION

For the foregoing reasons, the Court has **GRANTED** Defendant's motion, Dkt. 28.


/s/ Randolph D. Moss
RANDOLPH D. MOSS
United States District Judge

Date:  March 27, 2020